In re Don F. PITTS, Debtor.

George VLAHOS, Plaintiff,

v.

Don F. PITTS, Defendant.

Bankruptcy No. 79–24056–RO.

United States Bankruptcy Court,
C. D. California.

Dec. 21, 1979.

John B. Vlahos (of Ford & Vlahos, San Francisco, Cal.), for plaintiff.

Max H. Rush (of Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal.), for defendant.

MEMORANDUM OPINION RE
REQUEST FOR RELIEF
UNDER § 362(d)

ROBERT L. ORDIN, Bankruptcy Judge.

The debtor, PITTS, filed his petition under Chapter 13 on November 26, 1979. At that time he was the owner of residential real property subject to the following encumbrances: a first deed of trust to secure an indebtedness with a current outstanding principal balance of $62,260; and a second deed of trust dated November 10, 1978, having an unpaid balance of principal and interest of $34,615.

No payments having been made on account of the second trust deed since April 1979, notice of default was recorded on June 29, 1979. No sale was held because of the filing of the chapter 13 proceedings and the resulting stay, based upon § 362.

On December 3, 1979, the plaintiff (holder of the second) filed a complaint to modify the automatic stay and seeking leave to foreclose. On December 6, 1979, the court made its order: (a) fixing the trial date for December 20, 1979; (b) directing the defendant to file a responsive pleading on or before December 17, 1979; and (c) directing counsel for plaintiff and defendant to meet on or before December 19, 1979, and to prepare a stipulation with respect to facts not in dispute, the issues of fact to be litigated, and to which should be appended a list of exhibits intended to be introduced (except those to be used solely for impeachment).

The debtor filed its answer on December 14, 1979, and on December 19, the parties filed the stipulation of facts responsive to the court's order of December 6, 1979. The facts contained in the stipulation conformed to those set forth above, except with respect to the value of the property. The plaintiff asserted the value to be $125,000; while the debtor asserted the value to be $135,000.

The trial was heard and concluded on December 20, 1979. The plaintiff bases its request for relief upon the lack of adequate protection of plaintiff's interest in the property. The plaintiff explains his lack of adequate protection as follows:

(a) The property has a value of $125,000, and plaintiff concedes that for purpose of this hearing it must be assumed that the property would sell for this sum.

(b) The aggregate of the face amount of the first, $62,260, and the present principal and interest balance of the second, $34,615, total $96,875.

(c) Costs of foreclosure and sale, including brokerage costs and the usual escrow and title costs, approximate $9,000.

(d) The aggregate of these equals $105,-875, compared to which the value of the property, $125,000, is inadequate to justify a finding of adequate protection.

The debtor asserts to the contrary, and argues that the cushion between the encumbrances and costs of sale, $105,875, and $125,000, requires a finding that plaintiff is adequately protected.

"Adequate protection" is not defined in the Bankruptcy Code. The three specific examples of adequate protection referred to in § 361

". . . are neither exclusive nor exhaustive. They all rely, however, on the value of the protected entity's interest in the property involved." (H.R. 95–595, p. 339, U.S.Code Cong. & Admin.News 1978, pp. 3, 511)

"The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept." (H.R. 95–595, p. 338, U.S.Code Cong. & Admin.News 1978, pp. 3, 511)

"The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he [bargains] for." (H.R. 95–595, p. 339, U.S.Code Cong. & Admin.News 1978, p. 511)

■ How is adequate protection defined in the context of this fact situation?

A basic ingredient of the secured creditor's bargain is the right to resort to the collateral, if necessary, in payment and discharge of the debt. However, the expenses incident to foreclosure and sale are also an

integral part of this bargain. Use of the collateral to pay and discharge the debt contemplates the mutation of the collateral to cash in an amount equal to the sum of the claim and the foreclosure costs. The base figure in any realistic analysis of the secured creditor's position must be the aggregate of (i) the amount of principal, interest, and other permissible charges to date of sale, plus (ii) the costs of foreclosure and sale. The difference between this base figure and the anticipated sales price may be referred to as the cushion. In the case at bar, the cushion consists of the difference between $125,000 (the value of the property) and $105,875 (the aggregate of $62,260, the first lien; $34,615, the second lien; and $9,000, the cost of foreclosure and sale). This cushion is equal to $19,125.

We deal here in likelihoods and probabilities. We do not have techniques or paraphernalia with which to make evaluations or predictions with the finite exactitude known to the laboratory. We note and pass without discussion the *many* variables which may ultimately negate and destroy the validity and fairness of the conclusions so carefully and thoughtfully synthesized by court and counsel: for example, termite costs, structural defects, title problems unforeseen, attorneys' fees, upswing or depression of land values, fluctuation of interest rates affecting the availability to purchasers of mortgage funds, and matters of similar import. However, it must be noted that interest of approximately $1,000 per month will accrue on the sums secured by the encumbrances. And the plaintiff is currently sustaining the burden of the payments on the first lien, to prevent foreclosure.

What is the amount to be protected? Except for the illustrative subsections (§ 361(1) and (2)), the provisions of the Code do not answer this question. The House Report 95–595, p. 39, and various sections of the Code (§§ 361, 362(d) and 362(f), for example), refer to the value of the protected entity's interest in the property. § 361(1) and (2) describe the required protection more precisely, in terms of the *decrease* in value resulting from the automatic stay; but this language is used in the context of "periodic cash payments" and "an additional or replacement lien."

Query: Is "decrease in the value of such entity's interest" resulting from the stay the *measure* and *limit* of the adequate protection to which the secured creditor is entitled? Yes, says the debtor. In the case at bar, the collateral *is* reasonably stable in value and the secured creditor's claim will not increase except for the accrual of interest. (No issue has been raised with respect to depreciation in the value of the collateral.) Accordingly, the debtor asserts that adequate protection is fully provided for by the cushion; at least until such time as the increase in the value of the claim or decrease in the value of the collateral eliminates the cushion.

"What about my bargain?" responds the secured creditor. The cushion was part of that bargain! No secured creditor structures a transaction in such fashion that the value of the property equals the amount of his claim. The existence of an equity, in terms of collateral value in excess of the secured creditor's claim, is an elementary and fundamental part of the transaction. True, the secured creditor assumes the risk that default and sale may occur at a time when the market is depressed so that foreclosure and sale may not produce sufficient funds to pay the claim. However, to deprive the secured creditor of the right to proceed with foreclosure at a time when a cushion exists and to compel postponement of his remedy in the face of a clearly foreseeable possibility that the cushion may disappear, is to expose the secured creditor to risks which were not part of the bargain. This is particularly important to the secured creditor who assumed the position of a second lienor.

The cushion in this case is minimal. Erosion of that cushion may place the secured creditor in serious jeopardy. Despite its fragile and precarious nature, however, its existence at this time cannot be denied. Adequate protection in these circumstances requires, at a minimum, a periodic and care-

ful surveillance of the facts and circumstances and the structuring of relief calculated to avoid dissipation of whatever protection the cushion affords. Accordingly, the court is disposed to continue this matter for trial to February 6, 1980 at 2:00 p. m., when the court will receive further evidence concerning valuation, and a reanalysis of the cushion.

The interim rules were drafted by the Reporters for the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States, and were distributed by that Committee to be used as guidelines by the bench and bar pending a complete revision of the Bankruptcy Rules by the Advisory Committee. These rules were adopted in the Central District of California on August 15, 1979.

Rule 4001(a) provides:

The stay of any act against property of the estate under 362(a) of the Bankruptcy Code expires 30 days after a final hearing is commenced pursuant to 362(e)(2) of the Code unless within that time at or after the final hearing the court determines that the stay be continued.

While the interim rules were not technically promulgated by the Advisory Committee, it does not seem inappropriate to analyze the rules in the context of the statute (28 U.S.C. § 2075) which authorizes the promulgation of rules by the Committee.

28 U.S.C. § 2075 authorizes the Supreme Court to proscribe the "forms of process, writs, pleadings, and motions, and the practice and procedure" under the Bankruptcy Act. However, the section further provides that "such rules shall not abridge, enlarge, or modify any substantive right." The section was amended by § 247 of the Bankruptcy Reform Act. The effect of this amendment is to provide that any conflict between rules promulgated under § 2075 and the provisions of the Bankruptcy Code will be resolved in favor of the Bankruptcy Code. The House Report 95–595, p. 449, U.S.Code Cong. & Admin.News 1978, p. 621, makes the following comment on this change in § 2075:

With the extensive revision and modernization of the bankruptcy law proposed by this bill, in which nearly all procedural matters have been removed and left to the Rules of Bankruptcy Procedure, the need that currently may exist to permit the Supreme Court's rules to supersede the statute disappears. Rules promulgated under section 2075 will no longer be permitted to be inconsistent with the statute. To the extent a rule is inconsistent, the statute will govern.

■ To the extent that Rule 4001 purports to preclude this court from proceeding with the conduct of this hearing in the manner indicated, it is invalid. The imposition of a 30-day maximum within which the court must finally determine the rights of the parties and the conditions upon which the stay is regulated unduly restricts the discretion of the court and its power to deal with substantive rights of the parties under the Code. Section 362(d) gives the court broad discretion to terminate, annul, modify or condition a stay. In the case at bar, it is appropriate for the reasons indicated that the stay be continued in effect pending a re-examination of the cushion on a date fixed, with due regard to the decreasing nature of the cushion and the periodic amount of that decrease. The retention by the court of jurisdiction so to do is essential to a preservation and examination of the substantive rights of the parties. Imposition or interference with the court's discretion in this regard cannot be justified on the basis of anything in 28 U.S.C. § 2075.

Moreover, Rule 4001 deals with substantive matters and is not directed at "forms of process, writs, pleadings, and motions, and the practice and procedure" under the Bankruptcy Code. The imponderables associated with balancing the debtor's right to rehabilitation against secured creditor's rights to protection of their property interests pose a monumental challenge to the scholarship, ingenuity and legal expertise of the bench and bar. No justification exists for further complicating the task by the imposition of an arbitrary rule which limits and curtails the ability of the court and

counsel to frame reasonable and fair practices and guidelines to solve problems of the sort posed in this case.

This Memorandum Opinion shall constitute findings of fact and conclusions of law, as provided in R. 752(a).