In the Matter of James P. MULCAHY and Evon B. Mulcahy, dba Pequot Village, Debtors.

Adrian E. LOPER and Janet C. Loper, Plaintiffs,

v.

James P. MULCAHY and Evon B. Mulcahy, Debtors, Defendants.

Bankruptcy No. 2–80–00527.
Adversary Proceeding No. 2–80–0224.

United States Bankruptcy Court, D. Connecticut.

July 31, 1980.

Michael D. Shapiro, New London, Conn., for plaintiffs.

Howard L. Siegel, Hartford, Conn., for defendants.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

James P. Mulcahy and Evon B. Mulcahy, husband and wife, doing business as Pequot Village (Debtors) filed for reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code on May 22, 1980. Adrian E. Loper and Janet C. Loper (Plaintiffs), holders of a third mortgage on property of the Debtors, brought this action by a complaint dated June 2, 1980, to vacate the automatic stay imposed by 11 U.S.C. § 362 in order to permit a pending foreclosure sale ordered by a state court to go forward.[1]

### Facts

In May, 1976, the Debtors bought certain real property known as Pequot Village (property) from the Plaintiffs for a purchase price of $285,000.00. Consideration for the sale consisted of $30,000 in cash, assumption of two existing mortgages and the execution of a third purchase money mortgage. The property is located in Montville, Connecticut and comprises nearly 27 acres of land, with approximately 1,000 feet of lake frontage. There are extensive improvements on the land for running a summer campground, to wit, 75 campsites, two dwelling houses, a boathouse, a recreation hall, bathhouses, and twenty-two summer cottages. Since 1976, the Debtors have operated the property as a seasonal recreational camping area. Mr. and Mrs. Mulcahy and their four children have constituted the operating staff of this venture. In 1978 and 1979, the Debtors carried out major improvements to the property costing $92,-000.00, including re-roofing of the summer cottages, repair of the main road, and replacement of electrical wiring and water lines. The Debtors defaulted on their mortgage payments to the Plaintiffs and on January 22, 1980, the Plaintiffs sought foreclosure of their mortgage in a state court. On April 14, 1980, a judgment of foreclosure by sale entered in the Superior Court for the Judicial District of New London, setting May 24, 1980 as the date of sale. On May 22, 1980, the Debtors filed their Chapter 11 petition, thereby invoking the protection of the § 362 automatic stay and giving rise to the instant proceeding.

The lien of the Plaintiffs' mortgage is junior to tax liens held by the Town of Montville and two prior mortgages, and is senior to a fourth mortgage held by the Small Business Administration (SBA) and two attachments on the property. The parties have stipulated that encumbrances upon the property as of June 30, 1980 total $299,131.49. This total results from the addition of the following:

| Town of Montville | Tax Liens | $ 11,262.67 |
| Anne Alquist | Mortgage | $ 59,166.99 |
| Elizabeth Wright | Mortgage | $ 28,284.93 |

---

1. Section 362(a) . . . [A] petition . . operates as a stay, applicable to all entities, of
. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate; . . ..

| Adrian & Janet Loper | Mortgage | $135,506.98 |
|---|---|---|
| SBA | Mortgage | $ 57,409.92 |
| Blanche Kusovitsky, et al | Attachment | $ 1,300.00 |
| Conn. Bank & Trust Co. | Attachment | $ 6,200.00 |

At the hearings, the Plaintiffs' appraiser, F. Jerome Silverstein (Silverstein), testified that the property had a fair market value of $319,000.00, whether based on a "depreciated cost" analysis or on an "income" analysis. The latter figure assumes a 15% capitalization rate. He rejected a valuation based on a comparable sales approach as being inappropriate. Silverstein stated that his valuation contemplated a sale resulting from exposure in the open market with a reasonable time allowed in order to find a knowledgeable buyer. His opinion of a "forced sale value" was $256,000.00, a reduction of 20% from fair market value. It was undisputed at trial that the business for which the property is best suited, camping, is seasonal, that a potential buyer would most likely be a party who would be in a position to live on the property and personally operate the camping business, and that potential buyers so situated are limited in number. Attorney Joseph F. Segal (Segal), Committee of Sale appointed by the New London Superior Court, testified that as a result of advertising the foreclosure sale, only six parties evinced an interest in the property. Advertisement of the sale, under the terms of the judgment of foreclosure, was on two dates in each of three newspapers. The first date for advertisement was May 9, 1980. Segal conceded that the two-week period between the first advertisement and the date of sale did not provide adequate time for prospective buyers to undertake the extensive arrangements necessary for a purchase of commercial real estate of this type, such as a careful physical examination of the numerous buildings, the securing of financing or the checking for zoning compliance.

The Debtors have contributed a net of $43,000.00 during the past four years to operate the camp, and during the year preceding their petition for a Chapter 11 reorganization, they made significant payments on their secured indebtedness. Further facts will be noted as the claims of the parties are discussed.

*Claims of the Parties*

The Plaintiffs seek relief from the stay imposed by § 362 of the Bankruptcy Code.[2] They allege that the Debtors have not borne their burden of proof that the stay should remain in effect, and claim that the evidence supports a conclusion that there is no equity in the property to benefit the Debtors or their creditors. The Plaintiffs say that the Debtors have not satisfied a showing that there is a reasonable likelihood of successful reorganization. They further allege that an offer of adequate protection made by the Debtors is insufficient to protect the Plaintiffs' interest if it does not provide periodic cash payments to the Plaintiffs.

The Debtors argue that adequate protection for the Plaintiffs' lien is available, and that their offer of adequate protection by means of cash payments on liens prior to that of the Plaintiffs and by granting additional liens is authorized by § 361 of the

---

2. Sections 362(d) and (g) provide:

. . . . .

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization. . . .

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay or any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Bankruptcy Code.[3] They contend that the Plaintiffs have failed to meet their burden of proof as to the claim that there is no equity in the property for the Debtors, and that the record supports a conclusion that if the stay is continued, there is reasonable likelihood of a successful reorganization. Thus, the issues dividing the parties are those involving the Debtors' equity, or lack thereof, in the property, the likelihood that if the stay is continued, there will be a successful reorganization, and the adequate protection of the Plaintiffs' interest in the property during any continuance of the stay.

### Equity of the Debtors

█ Central to the issue of whether or not the Debtors have equity in the property is the problem of valuation. The testimony of Silverstein, the Plaintiffs' appraiser, is that fair market or going concern value of the property was, at the time he appraised it, $319,000.00 and that the value would be decreased by 20% if the property were subjected to a forced or liquidation sale. The Debtors' claim that the fair market value adduced by the Plaintiffs' own appraiser of $319,000.00 exceeds the total encumbrances upon the property of $299,131.49 by $19,868.51, and that this represents equity in favor of the Debtors. They say that in fact the equity is greater by an additional amount of $6,200.00 because the claimed lien of Connecticut Bank & Trust Company

was secured within the period prohibited by 11 U.S.C. § 547 and is thus a voidable preference.[4]

The Plaintiffs, who bear the burden of proof on this issue, argue that the court should not adopt fair market value in its determination of whether or not there is equity in the property for the Debtors. They claim that the proper value for determining equity for the Debtors is a point midway between "going concern" value and "liquidation" value, or $287,500.00. Such amount, they point out is less than the stipulated total encumbrances of approximately $299,000.00, and, thus, there is no equity for the Debtors. In support of their argument that the court should "split the difference" between these two values in determining if there is equity for the Debtors, the Plaintiffs cite 2 *Collier on Bankruptcy* (15th ed., 1979) at 361–13, which authority, they say, approves such a method. However, a perusal of the citation reveals no such support.

The analysis at 2 *Collier, supra,* at 361–13 indicates that where there is a wide latitude between going concern value and liquidation value "determination of which entity should be entitled to the difference . . . must be based on equitable considerations based on the facts of the case." *Ibid,* citing the legislative history at *H.R. Rep.* No. 595, 95th Cong. 1st Sess. 339 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6295.

3. Section 361.

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
    (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
    (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
    (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an

administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

4. The Debtors in their brief also provide an elaborate analysis whereby they attempt to show that because of a differential between the 1979 rental rates applied by Silverstein in his income analysis and the actual rates being charged at Pequot Village for the 1980 season, Silverstein underestimated the value of the property. They also challenge the propriety of Silverstein's assumed 15% capitalization rate, given the recent decline in market interest rates since the appraisal. The court finds these criticisms not persuasive, and concludes that $319,000.00 represents a fair market value for the property. The Debtors did not offer any expert testimony on the issue of valuation.

Nowhere in 2 *Collier, supra* is there a formula applying the average of low liquidation and high going concern values such as the Plaintiffs' request. 2 *Collier, supra,* at 361–15 states that where there are valuation questions,

> The fundamental point is that valuation should not be used as a device to pass the risk of continued operations to creditors while at the same time premature anticipation of a possible liquidation should not permit termination of a case which could produce a higher return if continued. As was noted by the Congress, such matters can only be decided on a case by case basis and upon equitable considerations arising from the facts of the case.

Taking into account the nature of the Debtors' business, the prospects for rehabilitation, and the nature of the collateral, the Plaintiffs are not entitled to the benefit of a liquidation appraisal under the circumstances of this case, and they have not borne their burden of proof that there is no equity for the Debtors in the property.

### Possibility of Successful Reorganization

█ Even if it were to be found that the Debtors have no equity in the property, this would not be dispositive of the relief from stay permitted by § 362(d)(2). Section 362(d)(2)(B) requires that even if there is no equity in the property for the Debtors, the Debtors can avoid the lifting of the stay by a showing that the property is necessary to effective reorganization. Here, where the property is the sole basis of the Debtors' business, there is no practical sense in which the court could find that the property was not necessary to an effective reorganization. A prior decision of this court, however, held that

> the requirement in § 362(d)(2)(B) that the property "be necessary to an effective reorganization" depends upon a finding by the court that there is a reasonable possibility of a successful reorganization within a reasonable time. *Matter of Terra Mar Associates,* 3 B.R. 462, 466, 6 B.C.D. 150, 152 (B.C.D. Conn. 1980).

The Debtors claim that the record demonstrates the likelihood that a successful reorganization can be achieved within a reasonable time. They assert evidence of the Plaintiffs' appraiser that estimated net income from the property before debt service is $47,327.00. The Debtors state in their brief that the required annual payments under the existing four mortgages total $30,703.36.[5] Thus, the Debtors say that the surplus of over $16,000.00 annually means that after payment of the outstanding mortgages and operating expenses, they could fund a reorganization plan and seek to restructure secured indebtedness pursuant to 11 U.S.C. §§ 1129(b)(1), 1129(b)(2)(A)(i) and 1124(2). In the alternative, the Debtors could seek a reorganization plan of an orderly sale of the property under 11 U.S.C. § 1123(b)(4). Mr. Mulcahy testified to some contact with prospective purchasers, although no formal offers had been received as of the date of the hearing. The court finds that the Debtors have presented sufficient evidence to support a finding that, at this early stage of the case, there is a reasonable possibility, if the stay is continued, of a successful plan within a reasonable time.

### Adequate Protection

█ Given the findings of the court that the Plaintiffs have not borne their burden of proof with respect to their claim that there is no equity for the Debtors in the property, it might appear unnecessary to reach the question of whether or not the Plaintiffs' interest in the property is adequately protected. The amount by which the fair market value of the property herein exceeds the total of outstanding secured debt, however, is $19,868.51 only. This is a minimal cushion by which to claim equity for the Debtors. A recent bankruptcy court decision has held that a minimal equity of $19,125.00 (where the outstanding liens and projected costs of foreclosure sale totalled $105,875.00 and the value of the

---

5. This figure is also generally supported in Exhibit A to the Statement of Financial Affairs filed by the Debtors with their petition and made an exhibit during the hearing.

property was $125,000.00) was "fragile and precarious" and called for "periodic and careful surveillance of the facts and circumstances and the structuring of relief calculated to avoid dissipation of whatever protection the cushion holds". *In re Don F. Pitts*, 2 B.R. 476, 5 B.C.D. 1129, 1330 (B.C. C.D. Cal. 1979). For similar reasons, the court addresses the issue of adequate protection as raised by the parties in their briefs.

The Plaintiffs allege that they are entitled to relief pursuant to § 362(d)(1), that their interest in the property lacks adequate protection within the meaning of that paragraph. They claim that in reviewing the equities between the parties, the court should find that "the balance of hurt" weighs against the Plaintiffs because the protection offered by the Debtors does not provide for periodic cash payments to the Plaintiffs.[6] The Plaintiffs further allege that they stand a substantial risk of material harm due to the seasonal nature of the business conducted at the property, and that they are suffering harm from the Debtors' failure to make any payments on the mortgage since August, 1979.[7]

The Debtors agree that "adequate protection" calls for the preservation of the value of a party's interest in property of the estate "as it existed at the commencement of the case". 2 *Collier, supra*, at 361–6. A decrease in such value could occur either through decrease in value of collateral or increase in amount of prior liens. The Debtors' claim that there is no evidence that the Plaintiffs' interest in the property has been impaired by a decline in value of

the property during the pendency of the proceedings and that they can offer adequate protection by both periodic cash payments to senior lienors, which they claim will redound to the security of the Plaintiffs by decreasing the encumbrances of those senior lienors, and by additional liens to the Plaintiffs on personal property that is currently free of liens.

The court finds the property has appreciated in value during the ownership of the Debtors. A part of this appreciation is attributable to the improvements made by the Debtors in 1978 and 1979. There is no basis to conclude that there is an immediate prospect of decrease in value occurring. The record indicates that the property is adequately insured, in good condition, and well maintained. In terms of prior encumbrances, the record indicates that the aggregate of all encumbrances senior to the Plaintiffs' mortgage on June 30, 1980 was $98,714.59. The Plaintiffs' debt totalled $135,506.98. The total of these encumbrances is $234,331.57. When this figure is subtracted from the fair market value of the property, $319,000.00, an "equity cushion" of $84,778.43 remains for the Plaintiffs. The Debtors argue, and the court agrees, that this is a substantial protection of the Plaintiffs' interest. *In re Rogers Development Corp., et al.*, 2 B.R. 679, 5 B.C.D. 1392 (B.C. E.D. Vir. 1980). The Debtors have offered to make monthly cash payments of $1,000.00 on the Town of Montville tax liens and $610.61 on the first mortgage. As these payments are made, the ensuing reduction of principal will more than compensate for the interest accruing

---

**6.** The court is mindful that it must consider the effect of denial of relief from stay upon those seeking that relief. 2 *Collier, supra* at 361–11 —361–12 describes the problem thus:

It must also be recognized that as a court of equity the bankruptcy court will be required to consider the impact of the stay on the parties and to consider the "balance of hurt" in fashioning relief. The method of adequate protection may vary. Where the nondebtor party is in the business of extending credit, a moratorium in debt service, if accompanied by measures to preserve the collateral value, may suffice. If, however, the obligation which the collateral secures is the principal

asset of a retired husband and wife, adequate protection of their interest may necessitate period cash payments. The ultimate meaning of the term will be developed in a case by case basis, in each instance with the relief being tailored to the fact situation.

In the case at bar, however, nothing appears of record to indicate that the Plaintiffs have some special need for protection in the form of periodic cash payments.

**7.** Debtors' Statement of Financial Affairs shows mortgage payments to the Plaintiffs through October, 1979.

on the second and the third mortgages. The Debtors offer to grant additional liens on a $1,500.00 cash security deposit currently held by the Connecticut Light and Power Company, and on an estimated $5,000.00 worth of personal property used by them in the camping business, currently lien free and otherwise available to be claimed as part of the Debtors' exemptions. The court finds that adequate protection is available to the Plaintiffs under the proposal made by the Debtors.

*Conclusion*

Having found that the evidence supports the Debtors' claim that there is equity in the property, that adequate protection to the Plaintiffs can be furnished, and that there is a reasonable possibility that the Debtors can achieve a successful reorganization within a reasonable time, the court holds that they should be given the opportunity to do so. The Connecticut Superior Court judgment provided for an unexplainably short period preceding the day of sale whereby any potential buyer would have had extreme difficulty to make the necessary arrangements in order to make a proper bid for the property. The Debtors have made substantial investments in the property since the purchase of the property. Under all of these circumstances, the court holds that the Debtors must be afforded the continued protection of the § 362 stay in order to formulate a plan of reorganization. The relief from stay complaint of the Plaintiffs, filed only 11 days after the Debtors' petition for relief, is premature. The court adopts the suggestion of the Debtors that a subsequent hearing be scheduled to consider further the issues of adequate protection. At such a hearing, the parties will be afforded an opportunity to present argument regarding the best methods to protect their interests including the need for financial reporting and remedies in the event of default of the periodic cash payments. The petition of the Plaintiffs for relief from stay is denied, and it is

So ordered.