**In re GASLIGHT VILLAGE INC. (also doing business as Villa Sol d'Or Apartments), Debtor.**

**Norman S. DRUBNER, Trustee, Plaintiff,**

**v.**

**GASLIGHT VILLAGE, INC., Defendant.**

**Bankruptcy No. 5–79–00838.**

**Adv. No. 205–5–80–0099.**

United States Bankruptcy Court, D. Connecticut.

Feb. 2, 1981.

See also, Bkrtcy., 6 B.R. 871.

Zeisler & Zeisler, Bridgeport, Conn., for trustee.

* U.S.B.J., Southern District of New York, sitting by designation of the Chief Judge, United States Court of Appeals, Second Circuit.

Hoberman, Pollack & Roseman, P. C., Hartford, Conn., for debtor.

## DECISION ON APPLICATION FOR ADEQUATE PROTECTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.*

The plaintiff, Norman Drubner, is the assignee of a second mortgage on the property of Gaslight Village, Inc., the above-captioned debtor. This court had previously recognized the first mortgagee's right to realize upon its assignment of rents, representing cash collateral to which the first mortgagee was entitled under Code § 363(c)(4). See In re Gaslight Village, Inc., 6 B.R. 871 (Bkrtcy.1980). Now the second mortgagee brings this proceeding under Code § 363(e) for adequate protection, as authorized under Code § 363(e).

The second mortgagee's application is supplementary to his original complaint which was filed with this court on January 17, 1980, for the purpose of obtaining relief from the automatic stay imposed under Code § 362. Prior to his retirement, Judge Trevethan ruled, in a decision dated August 18, 1980, that the automatic stay should continue in effect pending further proceedings upon request by the second mortgagee pursuant to Code § 363(e) with respect to the issue of adequate protection. Judge Trevethan noted that the purpose of such a further hearing would be "to determine if plaintiff is entitled to additional protection to maintain the worth of his interest in the property at the level it possessed when this case was commenced. If it is found that there is entitlement to additional protection, it should also be determined if the defendant can furnish it and of what it should consist."

The present adversary proceeding was therefore brought by the second mortgagee within the context of the original complaint for relief from the automatic stay. Hence, this court will adopt Judge Trevethan's

original findings with respect to value of the property and the amounts of the encumbrances thereon as of the period when he rendered his decision on August 18, 1980. The additional findings made by this court will reflect the conditions subsequent to Judge Trevethan's decision and up to the present time.

## FINDINGS OF FACT

1. The debtor filed its petition for relief under Chapter 11 of the Bankruptcy Act of 1978, U.S.C. § 1101 et seq. on November 27, 1979 and, pursuant to Code § 1108, has continued in the operation of its business, consisting of seven constructed apartment complexes and one building under construction, together with a shopping center located on approximately 8.3 acres of land in Waterbury, Connecticut.

2. The second mortgagee's lien relates only to the apartment houses, known as the Villa Sol d'Or Apartments, and does not involve the shopping center.

3. The parties have entered into a stipulation of facts, dated January 22, 1981, as follows:

"1. Gaslight Village, Inc., debtor, is the owner of Villa Sol D'or Apartments.

2. Said property is owned subject to:

(a) A first mortgage to United Investors in the original amount of $3,750,000, now reduced to $3,663,219.00.

(b) A second mortgage with collateral assignment of rents to Wornat Development Corp. in the original amount of $954,000.00 dated May 25, 1977, which mortgage was in foreclosure prior to bankruptcy proceedings in which case a judgment on July 18, 1979 in the amount of $1,335,594.99 and attorney's fees of $10,000.00, appraiser's fees of $3,750.00, and a search fee of $150.00 was entered and in which case the Superior Court had ordered Creative Management to act as receiver of rents and which receivership was operative prior to the Chapter 11 proceedings. No payments have been made against such mortgage since date of judgment.

3. Both taxes and water are collected by the Waterbury Tax Collector and as of January 6, 1981, there is claimed due to said tax collector for estate tax

| | |
|---|---|
| Principal | $354,585.92 |
| Interest | 87,712.48 |
| Lien fee | 157.50 |
| | $442,455.90 |

The amount due for the February installment due February 1 will be $61,127.65."

4. Norman Drubner, as assignee of Wornat, the second mortgagee, asserted as a secured claim the total unpaid balance due under the second mortgage, namely approximately $1,400,000. This claim is objected to by the debtor because Norman Drubner only paid $725,000 for an assignment of the mortgage, together with additional consideration factors, for a total $782,000.

5. Drubner's claim was regarded by Judge Trevethan, in his decision dated August 18, 1980, as amounting to $782,000 "... for the narrow purpose of determining if there shall be some *limited continuance of the stay to afford the Defendant a reasonable opportunity to effect a reorganization,* there is such appearance of merit to the Defendant's contention as to the actual allowable amount of the Wornat mortgage that it should be considered to be not over $782,000 in amount and the total of the encumbrances not to exceed $4,782,000." [Emphasis added]

6. Judge Trevethan found the value of the real property in question to be between $5,170,000 and $5,450,000. The total encumbrances of $4,782,000 then consisted of the following:

(a) $300,000 for real estate taxes due to the City of Waterbury.

(b) $3,700,000 due under the first mortgage.

(c) $782,000 ascribed to the plaintiff's second mortgage.

7. Thus, Judge Trevethan found that in August, 1980 there existed a cushion between the value of the property and the encumbrances ranging from a maximum of $668,000 to a minimum of $388,000.

8. In the interim, the parties have stipulated that the first mortgage, in the original amount of $3,750,000 has now been reduced to $3,663,219. The real estate taxes have increased from $300,000 to $442,455.90, with another $61,127.65 due on February 1, 1981, for a total of $503,583.55. Additionally, no payments have been made under the second mortgage since the filing of the petition on November 27, 1979. The interest rate is 11% under the note. Accordingly, even if the second mortgagee's claim is to be treated as $782,000 for the limited purpose of determining the extent of the automatic stay under Code § 362, rather than the claimed amount of $1,349,494.99, the 11% interest on $782,000 for over 14 months amount to slightly in excess of $100,000, for a total of $882,000.

9. Thus, applying the current figures for the same items, the total secured indebtedness amounts to $5,048,802. Given a real estate valuation of between $5,450,000 and $5,170,000, there exists a maximum cushion of $401,198 and a minimum cushion of $121,198, for an erosion of the plaintiff's interest under the second mortgage to the extent of $266,802 since the decision on his request for relief from the automatic stay.

10. To counter these figures, the debtor has shown that it has deposited $63,300 into a tax escrow, pursuant to Judge Trevethan's order dated March 26, 1980. This order was prompted by the fact that the debtor's apartment complex suffered a series of fires resulting in compensable fire insurance. The court noted that it was advisable that there be controls upon the debtor in its use of any insurance proceeds to make certain that the proceeds are used to restore the portions of the apartment complex which were damaged by fire, and for no other purpose. The debtor received $118,-000 under the fire insurance policy. After the expenditure of the proceeds to repair the fire damage, the debtor deposited $40,-000 into the tax escrow account for real property taxes and retains $13,800 in the fire insurance proceeds account. The two accounts, together with additional depositions, now total $63,300.

11. The debtor also holds $31,000 in an account as security deposited by tenants with respect to their rent. These funds must be regarded as held for the benefit of the tenants and cannot be ascribed as additional assets of the debtor.

12. The debtor has also expended approximately $23,000 for capital improvements and repairs other than attributable to the fires. There is no question that the debtor is doing a good job in maintaining the properties.

13. The debtor notes that since the commencement of this case, it has devoted all income derived from the apartment complex to payment of its operating expenses, first mortgage, security deposit escrow account and tax escrow account and it is prepared to continue to do so. Furthermore, the debtor has agreed to defer the customary 4% management fee during its period of operation.

14. The operating figures, however, reveal a monthly fixed charge for real estate taxes of approximately $10,000; interest on tax arrearage of 12%, amounting to approximately $3,500 per month; first mortgage payments of $34,500 per month; and an average monthly operating expense of approximately $19,000, for a total monthly obligation of $67,000. Against this figure, the debtor's highest monthly income between June and November, 1980 amounted to $57,608.55. Hence, the debtor's obligations exceed its revenues by approximately $10,000 per month, excluding the debtor's obligation under its second mortgage, with respect to which no payments have been made.

15. It is thus apparent that the debtor's financial position is deteriorating and that the second mortgage is not adequately protected against continued erosion.

16. In these circumstances, as an additional measure of protection, the debtor has proposed two additional liens. The first lien relates to property of the debtor known as the Gaslight Village Shopping Center, located in Waterbury Connecticut, which the debtor's appraiser values at $750,000. The second lien relates to the parcel of

vacant land adjacent to the shopping center, which the debtor's appraiser valued at $394,000. The total appraised value for both parcels is thus $1,099,000. However, in a previous proceeding commenced by mortgagees, Francis P. Feeley and Emmet P. Nichols, for permission to proceed with their state court foreclosure action Judge Trevethan found, on August 18, 1980, that the fair value of these parcels is not less than $818,000 and might well be found to be $900,000. He concluded that the debtor then had an apparent equity of at least $155,000 and no more than $224,000. He then noted as follows:

"Finally, continuance of the stay is but a *temporary circumstance* to give the defendant the opportunity to *proceed with all due speed* to achieve a solution to the lien problems and accomplish a reorganization of its financial affairs. It will benefit neither the debtor nor its creditors *to prolong a stay* of action if the result is to be no financial rehabilitation of the debtor and no restructuring of its indebtedness." [Emphasis added]

17. It is now more than five months since Judge Trevethan gave this sage advice to the parties, and more than fourteen months since the Chapter 11 petition has been filed. However, no plan has been filed, nor has there been any proof that rehabilitation is either likely or on the horizon. In these circumstances, this court cannot ascribe any value to the debtor's offer of additional so-called protection to this second mortgagee in so far as it relates to the debtor's other two parcels which are the subject of a pending state court foreclosure action.

18. The debtor has also offered as collateral, an additional lien beyond already existing liens on the appliances located at the apartment complex, consisting of refrigerators, stoves, dishwashers, air conditioners, washers and dryers. The debtor notes that its original cost for these items was $206,000 and that their present value is about $134,300. Assuming that some or all of these items may be removed without damage to the property, there is insufficient credible evidence for this court to conclude that an additional lien if given to this second mortgagee over existing liens on these items will be of much comfort to him in the event he is forced to liquidate his position. There is insufficient proof that these items will not simply be regarded as part of the apartment complex and that in the event of a foreclosure some lienholder will either remove these items or realize any significant amount for them.

19. From the foregoing facts, this court finds that the second mortgagee is not adequately protected.

20. It is also found that the debtor's equity, if any, is too slight to support the weight of the continued automatic stay, which commenced more than 14 months ago. The lack of any plan of reorganization or the likelihood that any realistic plan will be filed in the near future signifies that an effective reorganization of this debtor is not likely now, or in the foreseeable future.

## DISCUSSION

The automatic stay under Code § 362 was not intended to be used as a weapon or club to reduce secured creditors into submission with the continued passage of time while no payments are made to them. The automatic stay was only intended to give the debtor a breathing spell from his creditors and to afford him reasonable time to come up with a repayment or reorganization plan while relieved of the financial pressures that drove him to petition for relief. See *House Report No. 95–595*, 95th Cong., 1st Sess. (1977) 340–2; *Senate Report No. 95–989*, 95th Cong., 2d Sess. (1978) 49–51, U.S.Code Cong. & Admin. News 1978, p. 5787. The automatic stay was not intended to be a permanent refuge for a financially distressed debtor.

This debtor has shielded its apartment house complex under the automatic say umbrella for more than fourteen months without ever having filed a realistic plan of reorganization. During that time its unpaid real estate liability has increased, its operating revenues have not satisfied its

obligations and it has not been able to promulgate any realistic plan of reorganization. In the interim, this plaintiff's interest under a second mortgage is constantly eroding while he must stand by without receiving any payments. In ascertaining the interest asserted by this plaintiff, as assignee under the second mortgage, Judge Trevethan appropriately valued the assignee's interest to the extent of the consideration paid for the interest, rather than the face amount of the claim. In measuring adequate protection to be accorded a secured creditor's interest it is proper to reflect upon the amount paid for such interest, rather than the expected profit. The valuation for adequate protection need not necessarily be the same as valuation for allowances of claims. Thus, in *In re Tucker*, 5 B.R. 180, 6 B.C.D. 699 (Bkrtcy., S.D.N.Y. 1980), Judge Berk noted that an assignee of a claim who enters upon the scene with eyes wide open and is knowledgeable as to the debtor's then financial condition should be accorded a lesser degree of protection than the assignor who originally structured the transaction with higher expectations. Hence, the measure of protection for an assignee need not necessarily be the same as for the assignor.

Viewing the plaintiff's assigned claim under the second mortgage in the context of the lowered scope of protection to the extent of the actual consideration paid, rather than the full amount of the claim, this court has nevertheless, found that the plaintiff's cushion of protection has steadily declined in value since Judge Trevethan's decision on August 18, 1980 allowing the automatic stay to continue pending a determination as to adequate protection.

■ An equity cushion in and of itself may be sufficient to constitute adequate protection to sustain the automatic stay. *In re Rogers Development Corp.*, 2 B.R. 679, 5 B.C.D. 1392 (Bkrtcy., E.D.Va. 1980); *In re Pitts*, 2 B.R. 476, 5 B.C.D. 1129 (Bkrtcy., C.D.Calif. 1979); *In re Sulzer*, 5 B.C.D. 1314 (S.D.N.Y.1980); *In re San Clemente Estates*, 5 B.R. 605, 6 B.C.D. 838 (Bkrtcy., S.D.Calif. 1980); *In re Riviera Inn of Wall-*

*ingford,* 7 B.R. 725, CCH ¶ 67, 726 (D.C. Conn.1980). However, this court has found that the debtor's equity, if any, is too slight to support the weight of the continued automatic stay. The so-called additional protection offered by the debtor to the plaintiff in the form of junior liens on other encumbered property was found by this court to be insufficient. The shopping center property and adjacent vacant land are already the subject of a state court foreclosure action by other mortgagees. A junior lien on that property is tantamount to an invitation to further litigation. The offer of a junior lien on encumbered appliances in the apartment complex, including all of the refrigerators, is cold comfort to this plaintiff when another mortgagee may be entitled to the warmth of a blanket lien on these items.

That the debtor may have a counterclaim against the plaintiff by reason of the manner in which the plaintiff acquired his assigned interest, or that the debtor may have defenses against foreclosure of the second mortgage, are matters which may be asserted in the foreclosure action. For purposes of this hearing with respect to adequate protection, the plaintiff's filed claim must be deemed allowed, as mandated under Code § 502. Indeed, Judge Trevethan has recognized plaintiff's claim to the extent of $782,000 "for the narrow purpose of determining if there shall be some limited continuance of the stay ...". This finding is now binding in this supplementary hearing.

## CONCLUSIONS OF LAW

■ 1. The plaintiff, Norman Drubner, as assignee of a second mortgage covering the debtor's real property consisting of an apartment house complex known as Villa Sol d'Or Apartments is not adequately protected to the extent of his secured interest.

2. The debtor's offer of additional junior liens on other encumbered property will not adequately protect the plaintiff's secured interest.

3. The debtor's equity cushion, if any, is too slight to support a continuance of the automatic stay under Code § 362.

4. The continuance of the automatic stay for more than 14 months since the Chapter 11 petition was filed is not warranted by reason of the lack of adequate protection of the plaintiff's secured interest, especially in the light of the debtor's slight equity cushion, if any, the continued erosion of the plaintiff's interest and the debtor's failure to file any plan of reorganization.

5. In the circumstances of this case, it is not likely that a realistic plan of reorganization will ever by filed in the foreseeable future or that an effective reorganization can be achieved within a reasonable time.

6. The plaintiff is entitled to relief from the automatic stay under Code § 362 so that he may proceed in the state court foreclosure action, subject to whatever defenses the debtor may assert in such action.