In re Kenneth W. BOYD, Sr., Debtor.

**BURLINGTON SAVINGS BANK,**
**Plaintiff,**

v.

**Kenneth W. BOYD, Sr. and Jerome I.**
**Meyers, Esquire, Trustee, Defendants.**

Bankruptcy No. 83–91.
Adv. No. 83–0066.

United States Bankruptcy Court,
D. Vermont.

Oct. 11, 1983.

Thomas Costello, Rutland, Vt., for debtor.

Jerome I. Meyers, Springfield, Vt., Trustee, pro se.

Potter Stewart, Jr., Brattleboro, Vt., for Burlington Sav. Bank.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The debtor filed for relief under chapter 7 of the Bankruptcy Code (Code) on March 18, 1983. On June 7, 1983, the Burlington Savings Bank (Bank) as mortgagee of the debtor's residence filed a complaint for relief from the automatic stay of Code section 362(a). From the records in the case and from testimony adduced at the hearings, pertinent facts as set forth below have been established.

### FACTS

On March 12, 1979, the debtor bought a residence situated on one and one half acres for a purchase price of $35,000. The Bank as mortgagee of the property advanced $31,500 of the purchase money. The intention of the bank as the mortgage lender, according to the testimony of the bank officer who approved the mortgage loan, was to advance 90% of the purchase price.

As of the date of the hearing, the debtor was in default on its mortgage debt in the amount of $37,080. Six months hence the accrued debt would be $38,456 provided no payment was made. On July 18, 1983, the Bank, through its appraiser, estimated the fair market value of the property (FMV) at $36,500. In contrast, the owner estimated the current FMV at $44,000, give or take $1,000. Between 1979 and 1983, the debtor made improvements on the property with an ascribed value of $8,000.

### DISCUSSION

Code sections 362(d), (g), govern the procedure for relief from the stay of Code section 362(a). In pertinent part, subsection (d) provides that "... the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property ... or ... if ... the debtor does not have an equity in such property ..." Subsection (g) provides that "... the party requesting such relief has the burden of proof on the issue of the debtor's equity in property".

At issue is whether the debtor has any equity in the property. If the Bank's FMV figure is accepted, there is no equity in the property, i.e., the mortgage debt exceeds the FMV, and the Bank is entitled to relief from stay. On the other hand, if the debtor's FMV figure is accepted, there is equity in the property and the Bank is not entitled to relief from stay, for the reason that the "value cushion" or "equity cushion", i.e. the positive amount of the difference between the debt and the FMV, provides the Bank with adequate protection as to its security interest.

It is well settled that an "equity cushion" in and of itself may provide adequate protection for a secured creditor. *In re San Clemente Estates,* 5 B.R. 605, 610, 2 C.B. C.2d 1003, 6 B.C.D. 838 (Bkrtcy.S.D.California 1980); *In re Tucker,* 5 B.R. 180, 182, 2 C.B.C.2d 535 (Bkrtcy.S.D.N.Y.1980); *In re Llewellyn,* 27 B.R. 481, 482 (Bkrtcy.M.D.Pa. 1983); *In re McCall,* 25 B.R. 199, 202 (Bkrtcy.E.D.Pa.1982); *In re Gaslight Village, Inc.,* 8 B.R. 866, 871 (Bkrtcy.D.Conn. 1981); *In re 5-Leaf Clover Corp.,* 6 B.R. 463, 466 (Bkrtcy.S.D.W.Va.1980). The adequacy of the cushion should be evaluated on a case-by-case basis. *Matter of Schaller,* 27 B.R. 959 (D.C.W.D.Wis.1983); *In re Elliott Leases Cars, Inc.,* 20 B.R. 893 (Bkrtcy.D.R.I. 1982); *La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 288 (Bkrtcy.S.D.California 1982). One element which will determine the adequacy of the cushion is the chance that the cushion will rapidly dissipate. *In re Pitts,* 2 B.R. 476, 478, 1 C.B.C.2d 241, 5 B.C.D. 1129 (Bkrtcy.C. D.Cal.1979). However, a secured party may be adequately protected even though accruing interest results in an increase of the mortgage debt. *Com. of Pa. State Emp. Retirement Fund v. Roane,* 14 B.R. 542, 545, 5 C.B.C.2d 1173 (D.C.E.D.Pa.1981). The bottom line is that if the property is worth more than the debt, the Bank is adequately protected as long as it remains fully secured. *See, In re Nixon Machinery Company,* 9 B.R. 316, 318 (Bkrtcy.E.D.Tenn.1981); *see, also,* 2 *Collier on Bankr.* (15th ed. 1979 rev. 1983) ¶ 362.01 at page 362–15 (secured creditor is constitutionally entitled to pro-

tection to extent of the lesser of the value of the collateral or the amount of debt; there is no absolute right to an equity cushion); *In re Rogers Dev. Corp.,* 2 B.R. 679, 685, 1 C.B.C.2d 499, 5 B.C.D. 1392 (Bkrtcy. E.D.Va.1980) (erosion of equity cushion is not an unconstitutional deprivation of property).

Reviewing the testimony adduced at the hearings, the court observes that, in March 1979 when the debtor purchased his residence for $35,000, both the debtor and the Bank acted on the basis that the property was worth $35,000. Debtor's counsel submitted that the FMV of land is "what the land will fetch;" the court agrees. On this basis, the March 1979 FMV was $35,000. At the final hearing, the mortgage officer who had approved the secured loan as to this property testified that land values in the county in which the debtor resides have in general appreciated in value at a rate of 8% per year between 1979 and 1983. The Bank's appraiser testified that the annual rate of appreciation of land in that geographic market was roughly 9% to 9½%. The debtor thought it fair to say his land had appreciated in value at a rate of not less than 5% per year. Nevertheless, the position of the Bank was that the instant property was in disrepair and for that reason had an appreciated value of only $1,500 in excess of the 1979 purchase price, notwithstanding that the debtor had made significant improvements on the property (20 trees cut and stumped, 5 dumptrucks topsoil and seed, woodstove and block and tile chimney, large exterior deck, basement cement work, some interior finish), and notwithstanding that the Bank's appraiser testified that the exterior and interior surfaces seemed sound as of July 1983, as did the foundation, the plumbing and the wiring.

The court understands the propositions that deterioration of a property can offset inflationary gains, and that light finishing and landscaping can maximize the value of a property. What the court would find difficult to understand is that a property with a 1979 value of $35,000, on which $8,000 of improvements were made, during

a period of four years when values in the relevant real estate market were generally appreciating at an annual rate of 8% to 9½%, could be worth a mere $1,500 more than the 1979 purchase price.

The position of the Bank was that its appraisal was subject to a 10% margin of error with respect to the "true value" of the land; the value of the instant property, then, was between $32,850 and $40,150 if the property comprised one acre, as the Bank believed, and was worth more, according to the Bank's appraiser, if the land comprised over one acre.

The debtor testified that the land comprised one and one-half acres. Thus, the Bank's July 1983 appraisal may materially understate the value of the property. In any event, it is fair to conclude that the value of the property is at least the maximum figure available with reference to the Bank's one-acre estimate, *i.e.*, $40,150, and on this basis, the bank as mortgagee is adequately protected as to its secured debt:

| FMV of premises | $40,150 |
|---|---|
| less: accrued debt | 37,080 |
| equity cushion | $ 3,070 |

Even in six months, the presumed interim to accomplish a foreclosure, there would be an equity cushion: $40,150 (FMV) less $38,456 (debt) yields $1,694 (equity).

The debtor's estimated FMV ($44,000) is not an unrealistic figure for the value of the property, and, in view of the defect as to acreage in the Bank's 1983 estimate, is the figure which the court adopts. On this basis, the equity cushion of the bank is $6,920 ($44,000 less $37,080) rather than $3,070. As the accelerated mortgage debt will increase by only $1,376 over the next six months, and as there was no showing that the value of the collateral is decreasing, it appears that the Bank will remain fully secured for some time to come. It would, therefore, be premature to lift the stay.

ORDER

Upon the foregoing,

IT IS ORDERED, that the instant complaint for relief from stay be and hereby is DENIED.