In re ELLIOTT LEASES CARS, INC. Debtor.

RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff,

v.

ELLIOTT LEASES CARS, INC., Defendant.

MICROBIOLOGICAL SCIENCES, INC., Plaintiff,

v.

ELLIOTT LEASES CARS, INC., Defendant.

Bankruptcy No. 8100809.
Adv. Nos. 820077, 820128.

United States Bankruptcy Court, D. Rhode Island.

June 11, 1982.

William L. Needler, William L. Needler & Associates, Ltd., Chicago, Ill., William E. Parmenter, Parmenter & Associates, Providence, R. I., for debtor.

William F. Hague, Jr., Dick & Hague, Ltd., Providence, R. I., for Rhode Island Hospital Trust National Bank.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on (1) the Debtor's Application to Move Property of the Estate and Offer of Adequate Protection, (2) the Rhode Island Hospital Trust National Bank's (Bank) complaint for relief from the automatic stay, and (3) the complaint of Microbiological Sciences, Inc. seeking a determination of its rights as to certain leased vehicles, and an order approving a proposed settlement agreement with the Debtor.

The Debtor, the operator of a car leasing business, filed a Chapter 11 petition on July 31, 1981 in the Bankruptcy Court for the Eastern District of Pennsylvania, and on September 17, 1981, the case was transferred to the Bankruptcy Court for the District of Rhode Island. Rhode Island Hospital Trust National Bank claims a security interest in the Debtor's entire fleet of at least 58 vehicles,[1] most of which are now off lease and stored in Pawtucket, Rhode Island.

On February 12, 1982, the Debtor filed an application to move 35 of the vehicles in question to Denver, and to enter into a joint venture with Colorado Leasing Corporation

---

1. The Bank contends that the fleet consists of 58 vehicles. The Debtor will only concede that there are "58 or more" vehicles. *See* footnote 3, *infra.*

to lease and rent those motor vehicles in the Denver area. The joint venture parties have proposed an agreement which they argue provides adequate protection of the Bank's interest in its security, pursuant to 11 U.S.C. § 363.

On March 17, 1982 the Bank filed a motion for relief from the automatic stay to allow it to dispose of certain off lease motor vehicles in accordance with a judgment of the Providence County Superior Court.

Finally, Microbiological Sciences, Inc. also filed a complaint requesting the Court to determine the rights of the parties relative to fourteen leased vehicles in its possession. Several of the cars held by Microbiological are listed among the 35 cars the Debtor wishes to move to Denver.

These matters came before the Court at a hearing held on April 5, 9, 16 and 17, 1982. Because a prompt resolution of this dispute is required,[2] the Court submits herewith its Findings of Fact and Conclusions of Law, and reserves the right to file a more formal opinion in support of this order, as time permits.[3]

## FINDINGS OF FACT

(1) The Bank has a valid security interest in the 35 cars which are the subject of the Debtor's application. There has been no evidence presented contesting such interest.

(2) The present value of the 35 vehicles in question is approximately $241,000. The Bank's contention that this value must be adjusted downward to take into account the $600–$900 per vehicle cost to "spruce up" the cars is rejected. That expenditure will increase the value of each vehicle at least as much as the cost to refurbish.

The Debtor's position that the cars are worth "considerably more" in Denver is also rejected. The NADA mountain edition generally lists the vehicles in question at values only $100–$200 higher than the New England edition.

(3) In light of all the testimony and evidence adduced during the lengthy hearing, it is not necessary (as the Bank suggests) for "the Court or the bank to speculate as to the terms and conditions" of the offer of adequate protection. The terms of the offer are:

(a) That the Bank be paid $207,000 in monthly installments over 24 months.

(b) That the Bank receive monthly interest payments at 12 percent simple interest per annum.

(c) That a $25,000 irrevocable letter of credit be assigned to the Bank.

(d) That any non-rentable vehicles be sold and the proceeds turned over to the Bank.

(e) That the Bank be granted liens on any replacement vehicles.

(f) That all vehicles leased or rented by the joint venture in Denver be repaired, refurbished and put in rentable condition with funds advanced by Colorado Leasing Corporation.

(4) Based upon extensive testimony by officers of Colorado Leasing Corporation, as well as an examination of the pro forma statements prepared by the Debtor, I find that there is a reasonable possibility of a successful reorganization within a reasonable time. *See Terra Mar Dev. Corp. v. Terra Mar Associates (In re Terra Mar Associates)*, 3 B.R. 462, 466 (Bkrtcy.D.Conn. 1980).

(5) The Bank's contention that the Court must reject the Debtor's evidence to the effect that it will be able to obtain lease agreements in Denver under which lessees will pay more over a 24-month lease period than the value of the vehicle, is rejected. I accept the explanation of Gerry Campbell, the general manager of Colorado Leasing

---

**2.** The proposed joint venture must be started soon or not at all, and the security is suffering due to depreciation and vandalism while in storage.

**3.** In addition to the time constraints placed on the Court with respect to expediting both the hearing and the decision, the acrimony existing throughout these proceedings has made things even more difficult for the Court because the parties have been willing to agree to virtually nothing.

Corporation, who testified, based on his experience, that many lessees would rather lease than buy so that they can rotate cars, promote confidentiality, and trade in leased vehicles to maintain low mileage.

(6) The Bank's assertion that the Debtor proposes to sell unrentable collateral and keep the proceeds to offset the refurbishing and transportation costs is rejected. That argument is contrary to and/or unsupported by the evidence.

(7) Based on the Court's prior finding that the value of the vehicles in question is approximately $241,000, and the fact that the Bank's interest in those vehicles, according to its own records, is approximately $207,000, the Debtor has equity in the collateral.

## CONCLUSIONS OF LAW

■ (1) The contention by both parties that uncontradicted evidence *must* be accepted as presented is rejected. *See* 30 Am.Jur.2d *Evidence* § 1083 at 234–35 (1967).

■ (2) The Bank's contention that any offer of adequate protection must provide for interest at a rate 2 percent over the prime interest rate is rejected.

■ (3) The Debtor's offer of adequate protection need only cover the Bank's interest in the collateral intended to be used, i.e., the 35 vehicles in question, and not all of the property in which the Bank claims a security interest. Accordingly, the Bank is entitled to adequate protection to the extent of $207,000. 11 U.S.C. § 363(e).

■ (4) The use of the 35 vehicles is necessary for an effective reorganization.

(5) Since the Debtor has equity in the 35 vehicles in question, and has shown that said collateral is necessary for an effective reorganization, the Bank's motion for relief from the automatic stay is denied. 11 U.S.C. § 362(d).

■ (6) After careful consideration of the entire record, I conclude that the Debtor has offered adequate protection for the Bank's interest in the 35 motor vehicles in question. The offer contemplates full payment to the Bank, with interest, over two years. The collateral is to be maintained and reconditioned so that its value will be maintained. I have found that there is a reasonable possibility of a successful reorganization. Although there is, of course, some risk that the joint venture will be unsuccessful, the record indicates that the relief requested by the Debtor is in the best interest of the estate and its creditors at this time, and that to deny such relief would foreclose the possibility of any reorganization.

■ Adequate protection under the Bankruptcy Reform Act is not a guarantee, rather it is protection against unreasonable risk and is determined on the facts of each case. *See generally, Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.),* 12 B.R. 156, 7 B.C.D. 1122 (Bkrtcy. 1st Cir. 1981); 2 Collier on Bankruptcy ¶ 361.01 (15th ed.).

■ (7) The proposed settlement between Microbiological and the Debtor is approved. The Bank's contention that the Debtor may not reject the lease contracts because they are fully executed is erroneous. I conclude that these leases are executory contracts. Even assuming arguendo, however, that the leases are not executory, the Debtor could reject such contracts pursuant to § 365(a) which authorizes "the trustee, subject to the Court's approval, to assume or reject an executory contract *or unexpired lease.*" (emphasis added). The leases between the Debtor and Microbiological are clearly unexpired.

(8) The evidence establishes that the Debtor has assigned to the Bank all its right to receive payments from Microbiological pursuant to their lease agreements. Therefore, the Debtor is not entitled to the $10,000 it is to receive pursuant to the settlement of the adversary proceeding between the Debtor and Microbiological. That $10,000 is to be paid to the Bank.

Based upon the foregoing findings and conclusions, it is ORDERED:

(1) That the Debtor's application is granted, and it may proceed to move the collateral forthwith, according to the terms of its offer of adequate protection.

(2) That the Bank's request for relief from the automatic stay is denied, without prejudice.

(3) That the proposed settlement between Microbiological and the Debtor is approved, upon the condition that the $10,000 to be received from Microbiological is paid directly to the Bank.

(4) That the joint venture file monthly operational reports with the Bank, the United States Trustee, and the Court.