**In re MELINO CIGAR & CANDY CO., INC., Debtor.**

**COSTELLO BROS., INC., Plaintiff,**

**v.**

**PAWTUCKET INSTITUTION FOR SAVINGS, et al., Defendants.**

Bankruptcy No. 8100379.
Adv. No. 810213.

United States Bankruptcy Court,
D. Rhode Island.

Aug. 26, 1982.

Alan P. Cusick, Providence, R. I., for plaintiff.

Maury A. Ryan, Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R. I., for Nat. Grange Mut. Ins. Co.

Louis A. Geremia, Providence, R. I., Trustee.

Carolyn R. Barone, Allen M. Kirshenbaum Law Offices, Providence, R. I., for Reclaiming Creditors.

Blais, Cunningham & Crowe, Chester, Pawtucket, R. I., for Secured Creditors.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The question for determination is whether a guarantor's payment on a surety bond for cigarette tax stamp liability constitutes a priority administrative expense pursuant to 11 U.S.C. § 503(b)1(B) and § 507(a)(1).

A brief recital of the facts is helpful. On April 6, 1981 Melino Cigar & Candy Company, Inc. sold cigarettes, cigars, candy, etc. to the Plaintiff, Costello Bros., Inc. Costello took partial delivery on April 18, 1981 and transferred the merchandise to its' warehouse, where it was co-mingled with Costello's inventory. Thereafter, Costello learned that the merchandise purchased from Melino was subject to a security interest, as well as a number of claims for reclamation by Melino's suppliers. On April 23, 1981, Costello notified Melino that it was rescinding the April 6 agreement, and offered to return similar merchandise or equivalent cash, provided Melino could prove that it was the owner of the merchandise in question. Nothing took place as a result of the April 23 notice.

An involuntary Chapter 7 petition was filed against Melino on May 8, 1981, and the order for relief was entered on June 29, 1981. Costello filed the instant complaint on July 14, 1981, asking that the Court determine the ownership question. In the meantime, to avoid spoilage, Costello sold most of the merchandise (for $95,000), and deposited the funds in an interest-bearing custodian account.

On January 30, 1982, National Grange Mutual Insurance Company was granted leave to intervene as a Defendant, in order to obtain a determination of its interest in the proceeds of 4,293 cartons of cigarettes which were part of the sale from Melino to Costello. National Grange had guaranteed Melino's liability for the payment of cigarette taxes to the State of Rhode Island, and after the order for relief was entered, National Grange became primarily liable on the State's tax claim and paid the same pursuant to its bond.

In this proceeding National Grange claims priority creditor status as to the proceeds from the sale of cigarettes which were stamped before the sale to Costello, to the extent [1] that those proceeds represent taxes collected by Costello from sales to its customers. National Grange contends that "collection" of these taxes, which "occurred during the administration of the estate," constitutes an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B) and § 507(a)(1),[2] and asserts its alleged priority status as subrogee of the Rhode Island Division of Taxation. See National Grange's Memorandum at Pp. 36.

Since the secured party, the various reclaiming creditors, and the trustee have already negotiated a settlement of their respective claims, all parties agreed to address only the issue of National Grange's claim.

Section 503(b)(1)(B), under which National Grange claims administrative expense

---

1. The cost of the stamps in question is $7,727.40.

2. § 503. Allowance of administrative expenses.

   .     .     .     .     .

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
   (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
   (B) any tax—
   (i) incurred by the estate,
§ 507. Priorities
(a) The following expenses and claims have priority in the following order:
   (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

status, provides for payment as an administrative expense, any tax which was *incurred by the estate.* For the following reasons, the claim in question does not qualify for priority status. Distributors and dealers purchase tax stamps from the State Tax Administrator and are required to affix them to cigarette packages before they are sold to retailers and, in turn, to consumers. These stamps can be purchased in one of two ways. Stamps may be purchased for cash, or on 30-day credit if the distributor provides a surety bond. R.I.Gen.Law § 44–20–9. As a result, cigarettes are often sold to dealers and reach the retail market before the stamps have actually been paid for by the distributor.

The Defendant's argument fails because it is predicated upon the incorrect assumption that consumers/smokers would be liable for said taxes should the distributor default on its obligation to the State. To the contrary, however, once stamps are affixed to cigarettes, whether those stamps were paid for or purchased on credit, the tax is deemed to be paid with respect to all subsequent purchasers of the goods in question,[3] and the State's claim for unpaid taxes is limited to the purchaser of the stamps.[4]

In no event could there be any liability on the part of either retailers or consumers. In this case the stamps were purchased and affixed to the cigarettes *before* the petition was filed. Since the tax liability in question was incurred at the time the stamps were purchased, no tax was or could have been incurred by the estate thereafter.

The claim in question fails to qualify as an administrative expense for yet another reason. 11 U.S.C. §§ 503(b)1(B), 507 (a)6(E)(ii).[5] Section 503(b)1(B) excludes payment, as an administrative expense, of an excise tax on "a transaction occurring during the three years immediately preceding the date of the filing of the petition." Since it is undisputed that the stamps were affixed during the three years preceding the filing date, the tax in question is not an administrative expense. § 503(b)1(B).

For the reasons discussed above, National Grange's claim for administrative expense status must be denied. It is so ordered.

3. R.I.Gen.Law § 44–20-12. *Tax imposed on cigarettes sold.*—A tax is hereby imposed on all cigarettes sold or held for sale in the state by any person, *the payment thereof to be evidenced by stamps affixed to the packages containing the cigarettes* as hereinafter provided and as required by the administrator. (emphasis added)

4. The R.I. cigarette tax is not like the general sales tax in which the retailer is required to add a tax separately to the price of the article, R.I.Gen.Law § 44–18–19. In that situation, the retail seller is specifically designated as a collector of the tax, R.I.Gen.Law § 44–18–22. There are no similar provisions with respect to the cigarette tax. The vendor is not a tax collector, there is no separate debt due from the purchaser to the vendor for the tax, and the state has no lien on the cigarettes.

5. *§ 503. Allowance of administrative expenses*

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the estate, including

wages, salaries, or commissions for services rendered after the commencement of the case:
(B) any tax—
(i) incurred by the estate, *except a tax of a kind specified in section 507(a)(6) of this title*;
*§ 507. Priorities.*
(a) The following expenses and claims have priority in the following order:
. . . .
(6) Sixth, allowed unsecured claims of governmental units, to the extent such claims are for—
. . . .
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, *a transaction occurring during the three years immediately preceding the date of the filing of the petition.*
(Emphasis added)