**In re VERMONT REAL ESTATE INVESTMENT TRUST, Debtor.**

**CODY MANAGEMENT ASSOCIATION, INC., Plaintiff,**

v.

**VERMONT REAL ESTATE INVESTMENT TRUST, Defendant,**

**Bankruptcy No. 82–00033.
Adv. No. 82–0118.**

United States Bankruptcy Court, D. Vermont.

Nov. 1, 1982.

810

Wyman Smith, as trustee for debtor.

Ronald A. Fox, Montpelier, Vt., for Charles Crowell and Crowell England and Co.

David Putter, Montpelier, Vt., for Elizabeth Gentile.

James F. O'Neill, for Howard Bank, Administrator for the Sawyer Estate.

Douglas J. Wolinsky, Burlington, Vt., for Committee of Unsecured Creditors.

William B. Gray, Rutland, Vt., for Margaret Baird.

Julian Goodrich, Gibson, Noble & Goodrich, Montpelier, Vt., for debtor.

E. Bruce Weber, Brattleboro, Vt., for Dr. Felix Sommer.

Matthew Katz, Burlington, Vt., for Merchants Bank.

William Mikell, Burlington, Vt., William A. Fead, Montpelier, Vt., for Shareholders' Committee.

Hiram Hunn, Plainfield, Vt., for Cody Management Ass'n, Inc.

John Primmer, St. Johnsbury, Vt., for Judy Walke, et. al. as former trustees of debtor.

T.G. Hedges, pro se.

## MEMORANDUM AND ORDER ON THE PETITION OF CODY MANAGEMENT ASSOCIATION, INC., FOR RELIEF FROM STAY TO PERMIT TERMINATION OF LEASE OR SECURITY AGAINST LOSS

CHARLES J. MARRO, Bankruptcy Judge.

Cody Management Association, Inc., now petitions this Court for relief from the automatic stay under 11 U.S.C. § 362. Cody Management Association, Inc., (hereinafter referred to as "Cody"), seeks this relief in order to terminate the lease of March 30, 1981, between itself and the Debtor of the leasehold property commonly known as the "Cody Block" property. Cody further seeks, in the alternative, that the Debtor provide adequate assurances, by providing additional security for payment of the sums now due to Cody by the Debtor, and for

those to become due under the terms of the lease.

At hearings on October 14, 1982 and October 15, 1982, both Cody and the Debtor made presentations concerning the defaults in the lease; the date for the assumption or rejection of the lease; and the Debtor's plans for the leasehold if the lease is assumed. It is also noted by the Court that while Cody sought judgment on the face of the pleadings; the Debtor's answer was allowed to be timely filed, instanter; and that the affidavit of W. Wyman Smith was not considered as an evidentiary pleading in this adversary proceeding.

## I. DEFAULTS IN THE LEASE

The parties do not dispute the nature or extent of the defaults of the lease, with only minor exceptions. As established by the pleadings, the Debtor is in default on the "Cody Block" lease by virtue of its failure to pay the rent due April 1, 1982; its failure to pay an $8,500.00 lien in favor of the City of Montpelier; and its failure to pay real estate taxes. Since the issue of the lien of the City of Montpelier has been more extensively considered in Cody's Application directing payment and satisfaction of the lien, the remaining issues regarding the rent and the real estate taxes will be considered herein.

### A. RENT

■ On April 1, 1982, the Debtor was required to remit $72,000.00 to Cody, pursuant to the provisions of the lease of March 30, 1981, regarding the "Cody Block" property. The Debtor failed to do so, and thereby defaulted on the lease. Counsel for the Shareholders' Committee has objected to the amount of the default, noting that the Debtor's petition for reorganization was filed on February 16, 1982, and as such, the Debtor is only liable for the "reasonable value" of the use and occupancy of the premises. In support of its position, the Shareholders' Committee directed the Court's attention to 2 *Collier on Bankruptcy* ¶ 365.03[2], where it is stated:

... [I]t is a settled rule that until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the premises. Such value may be but is not necessarily, fixed at the rent reserved in the lease.

The Court acknowledges this settled rule. However, there has been no evidence produced by the instant parties to indicate that the "reasonable value" is anything other than that as fixed in the lease. And as was further stated by the Court in *In the Matter of Fred Sanders,* 22 B.R. 902, 9 B.C.D. 677 (Bkrtcy.1982) 9 B.C.D. at 680:

In the absence of convincing evidence to the contrary, the payment fixed by the lease is presumptively reasonable. *Green v. Finnegan Realty Co.,* 70 F.2d 465 (5th Cir.1934); *Matter of Chase Commissary Corp.* [11 F.Supp. 288 (S.D.N.Y.1935) ], supra; *Matter of Datamation* [1 B.C.D. 1698 (1975) ], supra. Fruehauf's claim, therefore, is to be computed by reference to the payments stipulated in the lease, unless the debtor establishes that these payments are not reasonable.

In view of the law as stated above, and the lack of contrary evidence, the Court finds the default and reasonable value for the use and occupancy of the premises to be that as set forth in the lease i.e., the annual rent of $72,000.00.

### B. UNPAID TAXES

■ Cody has alleged defaults in the lease by the Debtor's failure to pay real estate taxes and sewer taxes when due. The Debtor concedes its non-payment of real estate taxes in its answer. However, Counsel for the Shareholders' Committee objected to the inclusion of the appropriated tax refund for the period of December 30, 1980 through March 31, 1981, as being a pre-petition tax.

The Court agrees with the objection of the Shareholders' Committee and notes that a pre-petition tax will not be treated as an administrative expense. *In re Melino Cigar & Candy Co. Inc.,* 22 B.R. 703, 9 B.C.D. 665 (Bkrtcy.1982). Hence, the defaults against

the Debt-in-Possession are limited to the following taxes and other expenses, as paid by the lessor, Cody:

| Real Estate Taxes | |
|---|---|
| February 16, 1982 installment | $1891.85 |
| May 12, 1982 installment | $2241.55 |
| August 15, 1982 installment | $2299.24 |
| Sewer Tax Payment | |
| September 13, 1982 | $ 196.10 |
| Liability Insurance Premium | |
| July 1982 | $ 145.00 |

## II. DATE FOR ASSUMPTION OR REJECTION OF THE LEASE

■ Questions have arisen regarding the date upon which the Debtor was to assume or reject the unexpired lease with Cody. Counsel for Cody advocates that a period of 60 days was set by the Court at a hearing on August 5, 1982. Counsel for the Shareholders' Committee asserts and stresses that the 60 day period was sought to run from the time of a subsequent hearing on August 31, 1982. In either event, the Court now requires that the Debtor either assume or reject the lease by November 10, 1982.

In the event that the Debtor should assume the lease, it should be prepared to comply with 11 U.S.C. § 365(b)(1)(A). As stated in Section 365(b)(1)(A):

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

This section is made applicable to the instant Debtor-in-Possession by reason of 11 U.S.C. § 1107(a).

The Court further notes that there is an additional response to the argument of Counsel for the Shareholders' Committee, as to "reasonable value" under section 365. See In the Matter of Midtown Skating Corp., 3 B.R. 194 (Bkrtcy.1980) at page 198:

"The fact that the debtor has asked this court to fix use and occupancy does not mean that if the lease is not rejected it will lose its contractual vitality once the debtor can confirm a plan and emerge from this court rehabilitated. To the contrary, use and occupancy relates only to the Chapter XI period during which the lease is neither assumed or rejected. Philadelphia Co. v. Dipple, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941); Palmer v. Palmer, 104 F.2d 161 (2d Cir.1939), cert. den. 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494 (1939). If the debtor decides to assume, during its Chapter XI case, it will be under the obligation to pay the reserved rent from the filing of the petition until assumption and thereafter, and if the use and occupation fixed by this court pending such assumption is less than the rent reserved, the difference must be made up. See Matter of Chase Commissary Corp., 11 F.Supp. 288 (S.D.N. Y.1935); 2 Collier on Bankruptcy ¶ 365.-03[2] (15th ed. 1979).

As such, even if this Court were to now find that the reasonable value of the use and occupancy of the leasehold was something other than that as set in the lease, the Debtor would still be responsible to make up any difference on November 10, 1982, if the lease is assumed. And as previously stated, the difference between the reasonable value for use and occupancy and the rate in the lease, would occur only upon a showing that such rate was not reasonable, and that has not been shown.

## III. THE DEBTOR'S PLANS FOR THE LEASEHOLD IF THE LEASE IS ASSUMED

■ In presenting the case for its future intentions regarding the lease, the Debtor submitted the testimony of Alvin Judson Babcock, President of T.H.A. Inc. Mr. Babcock testified that T.H.A. Inc. was a development, construction, and management business, that would be interested in forming a partnership with the Debtor.

Mr. Babcock outlined the proposed partnership, stating that the Debtor would receive a 13% limited partnership interest for its assignment of the "Cody Block" lease, and the contribution of $20,000.00. As a

result of this interest, it was projected that the Debtor would receive $230,000.00 in cash and approximately $100,000.00 of investment credits over the next seven years. These projections are contingent upon the completion of the planned building project.

Mr. Babcock further testified that T.H.A. Inc., as the general partner, would assume the duty to pay the future rent to Cody. However, it would seek to form some arrangement with Cody as to the repayment of the rent due April 1, 1981. On cross-examination, Mr. Babcock indicated that it would take approximately six months before the proposed project could realize concrete financing and, in effect, before the proposed partnership could become a reality. Mr. Babcock further indicated that he was instantly unsure whether he would assume, or be able to cure, the approximately $100,000.00 default of the Debtor, on the lease with Cody.

As such, it appears to the Court that the Debtor's plans for the future of the "Cody Block" lease are at best speculative. It further appears that the Debtor's ability to repay its past rent obligation, as well as its future obligations, through its proposed plan, is equally as speculative. Without more, this Court could hardly find that the Debtor has provided Cody with; 1) adequate assurance of future performance under 11 U.S.C. § 365(b)(1)(C), if the Debtor decided to assume the lease; 2) adequate protection to prevent relief from stay under 11 U.S.C. § 362(d)(1).

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED as follows:

1. The Debtor shall assume or reject the lease with Cody Management Association, Inc., the lessor, as provided for under 11 U.S.C. § 365(d)(2), by November 10, 1982.

2. In the event the Debtor assumes the lease, it shall pay forthwith to Cody Management Association, Inc., the lessor, the real estate taxes and sewer taxes, consistent with this opinion; the liability insurance premium; and the rent arrearage due April 1, 1982. It shall further be prepared and pay the real estate tax installment due November 15, 1982, upon the leasehold estate.

3. In the event that the lease is not assumed, Cody Management Association, Inc., is granted relief from the stay as provided for by 11 U.S.C. § 362, so that it may take whatever action is necessary to terminate the lease. This relief shall further reserve to the lessor whatever rights it may have under the lease for the unrepaired damages suffered upon the leasehold.