In re BURLINGTON TENNIS
ASSOCIATES, Debtor.

VERMONT FEDERAL SAVINGS AND
LOAN ASSOCIATION, Plaintiff,

v.

BURLINGTON TENNIS ASSOCIATES,
Defendant.

Bankruptcy No. 82–189.

Adv. No. 83-0043.

United States Bankruptcy Court,
D. Vermont.

July 26, 1983.

See also 34 B.R. 832, 34 B.R. 839.

Alan F. Gear, Burlington, Vt., for plaintiff.

Charles H. Gibbs, Jr., Woodstock, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On April 26, 1983, Vermont Federal Savings and Loan Association (the Bank) filed a request under Bankruptcy Code (Code) section 362(d) for relief from the automatic stay of Code section 362(a). The Bank seeks relief in order to continue foreclosure proceedings against the debtor, Burlington Tennis Associates (BTA) and BTA's lessor, David M. Farrell (Farrell). Hearings on the matter were held and continued from time to time. The final hearing was held on June 30, 1983.

## FACTS

In 1973 Farrell as lessor conveyed to Cross-Court Burlington Associates (Cross-Court) as lessee a term for years in land; Farrell and Cross-Court then mortgaged

their interests in the land to the Bank as security for a construction loan. In 1977 Cross-Court assigned the leasehold to BTA as a non-assuming assignee. Also in 1977, Farrell and BTA joined in executing in favor of the Bank a second mortgage on the premises as security for a second construction loan.

Cross-Court defaulted on the 1973 note. BTA defaulted on the 1977 note. In July 1982 the Bank accelerated the 1973 and 1977 notes and subsequently instituted foreclosure proceedings against Farrell and BTA. On August 11, 1982, BTA filed for relief under Chapter 11 of the Code.

## DISCUSSION

Code section 362(d) provides that "... the court shall grant relief ... (1) for cause, including the lack of adequate protection of an interest in property ... or (2) if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." In that BTA must retain possession of the leasehold as a business property if it is to consummate reorganization, the Court may not grant relief under subsection 362(d)(2).

Subsection 362(d)(1) contemplates compensatory protection for creditor's interests imperilled by the debtor's performance. *Roslyn Savings Bank v. Comcoach Corp.,* 7 C.B.C.2d 1191, 1192, 698 F.2d 571 (2d Cir. 1983). To obtain relief under the subsection the Bank must demonstrate that it has a creditor's interest which is not adequately protected. *Id.* at 1192, 1193, 698 F.2d 571. As the mortgage payments are in arrears, the Bank has a creditor's interest which may entitle it to relief under subsection 362(d)(1).

The gist of the Bank's first line of argument is that the amount due under the mortgages exceeds the fair market value of the premises; thus, it is argued, no equity exists in the premises to protect the security interests of the Bank as mortgagee. However, it appears that in any event there is equity in the premises sufficient to adequately protect the Bank:

| ITEM | | IN THOUSANDS |
|---|---|---|
| value of premises as collateral (Bank's reliance figure) | 725 | |
| less: face amount of 1973 note | | 500 |
| face amount of 1977 note | | 50 |
| excess amount due to date of hearing | | 33 |
| | 583 | |
| Equity | 142 | |

There is an "equity cushion" even if Farrell's figures are used:

| ITEM | | IN THOUSANDS |
|---|---|---|
| unitary value of leasehold and reversion if mortgages are foreclosed (Farrell's estimate) | 675 | |
| less: amount due under mortgages as of date of hearing | 583 | |
| Equity | 92 | |

It is well settled that an "equity cushion" in and of itself may provide adequate protection for a secured creditor. *In Re Llewellyn,* 27 B.R. 481, 482 (Bkrptcy.M.D.Pa.1983); *In Re McCall,* 25 B.R. 199, 202 (Bkrptcy.E.D.Pa.1982); *In Re Gaslight Village, Inc.,* 8 B.R. 866, 871 (Bkrptcy.D.Conn. 1981); *In Re 5-Leaf Clover Corp.,* 6 B.R. 463, 466 (Bkrptcy.S.D.W.Va.1980); *In Re San Clemente Estates,* 5 B.R. 605, 610 (Bkrptcy.S.D.Cal.1980); *In Re Tucker,* 5 B.R. 180, 182 (Bkrptcy.S.D.N.Y.1980). The adequacy of the cushion should be evaluated on a case-by-case basis. *Matter of Schaller,* 27 B.R. 959 (U.S.D.C.W.D.Wis.1983); *In Re Elliott Leases Cars, Inc.,* 20 B.R. 893 (Bkrptcy.D.R.I.1982); *La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 288 (Bkrtcy.S.D.Cal.1982). One element which will determine the adequacy of the cushion is the chance that the cushion will rapidly dissipate. *In Re Pitts,* 2 B.R. 476, 478 (Bkrptcy.C.D.Cal.1979). The courts differ as to the percentage of market value of property required for an adequate "equity cushion". In one case an equity cushion of 40% of market value was considered necessary as to a lender obtaining a purchase money security interest in raw land, *In Re Lake Tahoe Land Co., Inc.,* 5 B.R. 34, 37 (Bkrptcy.D.Nev.1980). On the other hand it has also been held that an equity cushion of 15% to 20% of the value of the collateral was adequate protection as to a first mortgage lender acquiring a security interest in unimproved land. *In Re Rogers,* 2 B.R. 679,

680, 685 (Bkrptcy.E.D.Va.1980). The *Rogers* court explained

"that although the amount of the equity cushion may decrease daily as a result of the accruing interest and other costs exceeding any enhancement of value in the security, the amount of the cushion is sufficiently large at this time to make a granting of the relief from stay a premature action. Furthermore, the Court notes that the Supreme Court has said that there is no unconstitutional deprivation of property by the erosion of the equity cushion. 'Safeguards were provided to protect the rights of secured creditors throughout the proceedings, to the extent of the value of the property . . . There is no constitutional claim of the creditor to more than that.' *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940). Collier expounds on this statement by adding:

" 'It would appear that in a constitutional sense the right of the secured creditor entitled to protection will be no more than the lesser of the value of the collateral or the amount of the debt. There would be no right to have a "cushion" maintained on constitutional grounds although for policy reasons it may be appropriate to maintain the margin of security over debt as a means of "adequate protection".' Collier on Bankruptcy, 15th ed. § 362.01 at 362–15."

■ The bottom line in the instant case is that if the property is worth more than the debt, the Bank is adequately protected as long as it remains fully secured. *In Re Nixon Machinery Company,* 9 B.R. 316, 318 (Bkrptcy.E.D.Tenn.1981). Since the worth of the premises is significantly more than the amount due under the mortgages (by a factor of 15% or 25%, depending on whether the Bank's reliance figure or Farrell's estimate is used), the Bank is adequately protected even though accruing interest results in an increase on the mortgages. *Com. of Pa. State. Emp. Retirement Fund v. Roane,* 14 B.R. 542, 545 (D.C.E.D.Pa.1981).

Although interest is accruing to the Bank on the accellerated amounts due, the Bank has not demonstrated that the market value of the premises is depreciating such as to impair rapidly its security. This court is persuaded that, as the premises are insured, well-maintained and in good condition and there is no immediate prospect of a decrease in the value of the property, the Bank is protected as to its security interest, provided that there is a reasonable possibility that BTA can achieve reorganization. *See, In The Matter of Mulcahy,* 5 B.R. 558, 563 (Bkrptcy.D.Conn.1980). Though the stayed Bank might not receive immediately the benefit of its bargain with the mortgagors, Congress recognized that there may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. H.R. Rep. No. 95–595, 95th Cong. 1st Sess., (1977) at page 339, U.S.Code Cong. & Admin.News 1978, p. 5787.

■ BTA has the burden of proof as to the existence of a reasonable possibility that it can accomplish rehabilitation. Code § 362(g). As debtor-in-possession BTA has adopted new marketing and management programs and has published projections of income and expenses which, if substantially realized, will enable BTA to meet the mortgage debt, creditors' claims and operating expenses, including rents and arrears. At the hearing, cross-examination of the executive officer of BTA produced testimony that BTA had not met its projections in the interim between publication and the hearing but it was not demonstrated that the projections over time would be substantially defective. Balanced against these plausible projections and BTA's best efforts to realize them are BTA's financial obligations, past, present and future. These obligations are not as insurmountable as they apparently seem. The following observations are pertinent, viz:

(1) BTA must pay for the reasonable value of its use of the premises during the pendency of this proceeding, such value presumptively corresponding to the

post-petition rents due under the lease, *see, e.g., In Re Vermont Real Estate Investment Trust,* 25 B.R. 809, 811 (Bkrptcy.Vt.1982). However, it is not a foregone conclusion that BTA as debtor-in-possession need pay, before assumption or rejection of the lease, the amounts, if any, due for the probationary period under the agumented rents clause of the lease. 2 Collier 15th Ed. ¶ 365.03[2] at 365–24 n. 30, and at 365–25 n. 30, 31 (1980).

(2) Although BTA is obligated to pay off the rental arrearages, BTA may assume the lease before doing so, if as debtor it provides adequate assurance of prompt cure, Code § 365(b)(1)(A). However, under the circumstances of this case, where the lessor, without protest, let the pre-petition arrears build up for 44 months, BTA may be able to avoid prompt cure following assumption of the lease, and this Court, as one of equity, is inclined to regard the lessor's injury as self-inflicted. *In Re Orlando Coals, Inc.,* 6 B.R. 721, 725 (Bkrptcy.S.D.W.Va.1980). The principle enunciated in *Orlando Coals,* that the court need not afford a creditor better protection after the bankruptcy filing than it was content to endure prior to the filing, defuses the lessor's erstwhile right of quick payment of arrears if and when BTA assumes the lease.

(3) As to adequate assurance of future performance of the lease under Code section 365(b)(1)(C), it appears that the lessor waived his right to collateralized security for rents and it will, therefore, not be necessary for BTA to reopen a letter of credit in favor of the lessor as security for rents. Thus, $7,500 of BTA's liquidity or credit may be put to other use.

(4) As of the hearing date, state property taxes were current.

(5) BTA has kept rent and insurance current since filing.

It is not unreasonable to expect that BTA may effectively consummate a plan of reorganization since it is current in the payment of taxes, rent and operating expenses. In addition, it is not under the gun to cure the arrearages in rent and to reopen the $7,500 letter of credit as security for rents. The Court observes that, at this early stage of the proceeding, BTA as debtor-in-possession has no burden to establish a high degree of likelihood that it can successfully reorganize. *In Re Bermec Corporation,* No. 71–B–291 (Bankr.S.D.N.Y.1971) (Asa S. Herzog. Referee). With reorganization barely underway, it is sufficient that BTA demonstrate a reasonable possibility that it can effectively consumate the Plan. *In Re Bermec Corporation,* 445 F.2d 367 (2d Cir.1971); *In Re Yale Express System, Inc.,* 384 F.2d 990 (3d Cir.1967).

## CONCLUSION

In sum, because there is a reasonable likelihood that BTA may accomplish rehabilitation, and because the Bank is adequately protected for the time being by the "equity cushion" in the mortgaged premises, it would be premature for the court to lift the stay.

## ORDER

In accordance with the foregoing,

IT IS ORDERED that the instant request for relief from stay be and hereby is DENIED.