**In re PARK TIMBERS, INC., Debtor.**

**UNIFIRST BANK FOR SAVINGS, F.A., Plaintiff,**

**v.**

**PARK TIMBERS, INC., Defendant.**

**Bankruptcy No. 85–328.**

**Motion Nos. M–85–41, M–85–42.**

United States Bankruptcy Court, D. Delaware.

Nov. 8, 1985.

648

Bayard, Handelman & Murdoch by Peter J. Walsh, Wilmington, Del., and Scott, Hetrick & McBee by Tom B. Scott, III, Jackson, Miss., for Unifirst.

Morris, Nichols, Arsht & Tunnell by Paul P. Welsh, and David A. Drexler, Wilmington, Del., for Park Timbers, Inc.

HELEN S. BALICK, Bankruptcy Judge.

On October 24th, hearing was held on three motions filed by Unifirst Bank for Savings in the Chapter 11 proceeding of Park Timbers, Inc., which was filed on August 30th, 1985. The motions ask for alternative relief, the granting of any one of which would permit it to continue a foreclosure action against an apartment complex in Harvey, Louisiana on which it holds a first mortgage. The relief sought is:

1) A ruling that the stay order was not applicable,

2) To dismiss the Chapter 11 case as a bad faith filing and,

3) To lift the automatic stay order.

Unifirst has a first lien position against the 384 unit Bismarck Apartments by virtue of a promissory note in the amount of $4,250,000 executed by Francis L. Cappaert on May 1, 1976, secured by a recorded act of mortgage. On January 31, 1979, Bismarck Associates, a Louisiana partnership of which Bismarck Associates, Inc., is general partner, assumed Cappaert's obligation to Unifirst. The mortgage note calls for amonthly principal and interest payment of $32,678.82 and has been in default since January, 1985. Since the mortgage is non-recourse, Unifirst, on March 27th, proceeded against the apartment complex in the Louisiana courts and obtained a judgment of foreclosure on May 20th.

In connection with the foreclosure sale which was scheduled for September 4th, Unifirst was required under state law to provide the sheriff with an appraisal report. That report states the value of the property as of August 22nd to be $4,150,000. The report also indicates that an infusion of $1,600,000 is needed to cure the physical deterioration of the property.

On August 22nd, Marvin E. Greenfield, vice president of Bismarck Associates, Inc., contacted Ed Gordon, vice president of Unifirst, to request that Unifirst delay its foreclosure until after the end of 1985 in order to prevent adverse tax consequences to the limited partners of Bismarck Associates.

Between August 22nd and August 28th, at the request of Bismarck's apartment manager, and in order to keep the complex operating, Unifirst advanced $8,000 for payment of water, electricity and garbage collection.

Park Timbers was incorporated on August 29th. On the same date, Bismarck Associates executed a lease dated January 1, 1985 for the property in issue to Park Timbers. The next day, Park Timbers filed its Chapter 11 petition listing the lease as its sole asset. Park Timbers' attorney notified the sheriff that the foreclosure sale scheduled for September 4th was stayed by virtue of the automatic stay provisions of Section 362(a) of Title 11, United States Code.

Thereafter, on September 19th, Unifirst moved to dismiss or in the alternative to lift the automatic stay. On September 30th, it substituted the motions which came before the Court on October 24th.

I will speak first as to Unifirst's contention that the automatic stay provisions of 11 United States Code Section 362 are not applicable to its foreclosure action.

In determining what rights Park Timbers has in the apartment complex, the Court must look to the lease agreement between Bismarck Associates and Park Timbers. Although this issue has not been addressed in argument, the lease states that the rights of the parties therein are to be determined by Texas law. Since, to this Court's knowledge, there is no connection between the State of Texas and this transaction or any of the parties to this transaction, Delaware law will be applied to determine the rights of the parties.

Pursuant to the terms of the lease, Bismarck conveyed to Park Timbers the right to pay off the judgment against the apartment complex, the right to receive rents and an option to buy the property.

The next issue is whether Bismarck had a right, as of August 29th, 1985 to convey such interests in light of the May 20th judgment.

██ In the legal action pursuant to which the judgment was awarded, the Louisiana Court determined the rights of Unifirst versus Bismarck in the apartment complex. Subsequent to the judgment, however, Bismarck retained both legal and equitable rights in the property subject to execution of the judgment through the foreclosure sale. These rights would not be extinguished until the actual sale was consummated. Therefore, the Court must hold that on August 29th, 1985 a valid interest in the subject property was conveyed to Park Timbers, an interest that this Court finds sufficient to warrant protection under Section 362(a) of the Code.

I will next consider Unifirst's request for relief from the stay to proceed with the State Court action. Under 11 United States Code Section 362(d) there are two statutory grounds for granting relief from the automatic stay imposed under Subsection (a). The stay may be terminated, annuled, modified or conditioned, either one, for cause, which includes lack of adequate protection; or, two, where the debtor lacks equity in the property and the property is not necessary to an effective reorganization.

Under Subsection (g), the burden of proof on the issue of debtor's equity is placed upon the party seeking relief from the stay. The party opposing relief has the burden of proof on all other issues.

██ Unifirst contends that their rights in the subject property are not adequately protected. At trial, Unifirst's witness, Max Derbes, the real estate appraiser who had prepared the appraisal for the sheriff's needs, repeated that the present market value of the property is $4,150,000. Park Timbers presented no evidence to rebut this valuation. The amount due Unifirst as of this date, computed in accordance with the judgment of foreclosure, in round figures, is $4,500,000; if the debt were to be computed in the light most favorable to the mortgagor, the amount due in round figures is $4,200,000. Additionally there is the amount of $900.09 to be added to the

amount due for each subsequent day until the debt is paid.

Only 100 of the 384 units of the complex are occupied and approximately 150 other units are uninhabitable due to waste and deterioration. The roof leaks, the buildings are termite infested, sunken living rooms in many units have eight to ten inches of water in them, sagging balconies, in some instances, are propped up but in others are just hanging there. All of these conditions create potential serious liability problems. The property is and continues to seriously deteriorate and is in need of an immediate, large infusion of capital.

The present occupancy rate is insufficient to generate sufficient income to service the operating debts of the property. Based on these facts, I conclude there is no equity cushion in the property, there is a present threat of continued diminution in value because of the continuing deteriorating condition of the property including but not limited to damage by the elements but also vandalism, and all the while the debt continues to increase.

██ Moreover, even if Park Timbers had established the debt did not exceed but equaled its valuation and the debt would remain fixed during the Chapter 11 proceeding, the law in this District requires some compensation to the secured creditor for the loss of use of its money during the period between the filing of the petition and the confirmation of a plan.

Park Timbers has not offered adequate protection. It attempted to satisfy its burden through its witness, Martha Guise, who testified as to her involvement in a possible deal for the sale of the apartment complex. There was no evidence of the proposed contract of sale. There is no binding commitment in the specific dollar amount by either the named purchasor or an equity lender. Thus, Park Timbers, having failed to provide adequate protection, Unifirst is entitled to relief under Subparagraph (1) of Subsection (d), even though Section 362(d)(1) and (2) is written in the disjunctive and Unifirst has met its burden,

it would be entitled to relief under Subparagraph (2) as well.

My earlier remarks reflect that Unifirst has shown Park Timbers has no equity in the property. Park Timbers has failed to show that the property is necessary to an effective reorganization. True, the leasehold interest is Park Timbers' sole asset and it is indispensable to its survival, that is insufficient to satisfy the requirement of Section 362(d)(2)(B), that the propertyis necessary to an effective reorganization. Park Timbers must demonstrate that an effective reorganization is realistically possible. All that it has shown is that it wants to forestall foreclosure so that the property can be sold on the market. It does not have funds to service the debt nor to operate the complex. It does not have capital to cure the waste and deterioration. All it has is hope that it can be sold and in the interim wants Unifirst to bear all the risks. Park Timbers has not demonstrated that an effective reorganization is realistically possible.

The remaining issue is Unifirst's contention that the case should be dismissed with prejudice because it represents an abuse of the bankruptcy law.

Although Section 1112(b) does not expressly require a petition for relief under Chapter 11 to be filed in good faith, there is an implied requirement of good faith when filing any bankruptcy petition and evidence of an intent to abuse the reorganization process has been held to be sufficient cause for dismissal.

Recent creation of a debtor and a subsequent bankruptcy filing in and of itself is not indicative of a bad faith filing. Whether good faith exists in any case depends upon the facts and circumstances presented and no one factor is dispositive.

Here, Park Timbers was incorporated and a lease between Park Timbers and Bismarck regarding the subject property was executed the same day. The next day, the newly formed corporation filed a Chapter 11 listing the leasehold interest in the subject property as its sole asset.

Thus the conveyance of the leasehold interest was necessary for the creation of the debtor and the filing of a Chapter 11 petition. This was done because for some unstated reasons Bismarck did not want to be in a bankruptcy situation but it did want to delay the foreclosure sale scheduled for September 4th.

Being a newly organized corporation, Park Timbers naturally has no history of past business activity. It has no current business activity. The apartment complex is still being managed by Bismarck through its employees. Any activity with respect to possible sale is being handled through Marvin Greenfield who is vice president of Bismarck, Inc., the general partner of Bismarck Associates. Bismarck was in control of the property through August 29th and continues in control despite that possession and control was conveyed to Park Timbers under the lease.

The conclusion is inescapable. Park Timbers was formed and filed its Chapter 11 petition for the sole purpose of delaying Unifirst's foreclosure action in order to secure a buyer in the open market.

Further evidence of Bismarck's desire to delay the foreclosure sale is evidenced by the August 22nd letter from Marvin Greenfield to Ed Gordon of Unifirst requesting the bank to delay foreclosure until after 1985 in order to prevent adverse tax consequences to the limited partners of Bismarck Associates Limited.

The utilization of the bankruptcy system should not be the method by which to recoup an investment or avoid adverse tax consequences. The parties should be left to their contractual and state law remedies. The motion to dismiss with prejudice is granted.

The issue of sanctions has been raised. Where there has been a bad faith filing or an abuse of the bankruptcy laws, sanctions are appropriate under the Court's inherent power and Bankruptcy Rule 9011. Before a Court may impose sanctions under its inherent power, there must be a finding that the conduct constituted or was

tantamount to bad faith. That finding has been made. The purpose of sanctions is to deter future bad faith filings and to compensate those required to prosecute or defend their rights in the Bankruptcy Court. However, we also have here Unifirst's violation of the Court's directive that the status quo of October 24th be maintained until argument and the Court's decision on the issues raised by Unifirst's motions in this Court. It disobeyed that directive. Consequently, the sanctions which otherwise would be imposed against Park Timbers and its attorneys will be reduced. But for Unifirst's disregard for this Court's order, it would have been awarded attorneys' fees and all expenses incident to prosecution of its motions in this Court. However, I will award to it only the expenses incurred for travel to and from Delaware of Louisiana counsel and Unifirst's witnesses, plus court costs including but not limited to transcript fees previously required to prepare for argument.

The cases relied upon will be given to the court reporter for inclusion in the transcript of my decision, I ask Unifirst to settle an order in accordance with my comments.

### APPENDIX

Issue I—Applicability of the Stay

1) Restatement Second, Conflict of Laws, Section 187, Law of the State Chosen by the Parties

2) *Siegelman v. Cunard White Star, Ltd.,* 221 F.2d 189 (2 Cir.1955)

Issue II—Motion to Lift Stay

1) *In Re Albany Partners, Ltd.,* 749 F.2d 670 (11 Cir.1984)

2) *In Re Monroe Park,* 17 B.R. 934 (Bkrtcy D.Del.1982)

3) *In Re Burlington Tennis Associates,* 34 B.R. 836 (Bkrtcy D.Vt.1983)

Issue III—Motion to Dismiss

1) *In Re Albany Partners, Ltd.,* 749 F.2d 670 (11 Cir.1984)

2) *In Re Alison Corp.,* 9 B.R. 827 (Bkrtcy S.D.Cal 1981)

3) *In Re Dutch Flat Investment Co.,* 6 B.R. 470 (Bkrtcy N.D.Cal 1980)

4) *In Re Thirtieth Place, Inc.,* 30 B.R. 503 (B.A.P. 9 Cir.1983)

5) *In Re Harvey Probber, Inc.,* 44 B.R. 647 (Bkrtcy D.Mass.1984)

6) *In Re Burlington Tennis Associates,* 34 B.R. 836 (Bkrtcy D.Vt.1983)

7) *In Re 2218 Bluebird Limited Partnership,* 41 B.R. 540 (Bkrtcy S.D.Cal.1984)